UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| NUCLEAR FUEL SERVICES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Case No. 2:04-CV-338 |
| ) | |
| IMPACT PLASTICS, INC., ) | |
| PRESTON TOOL AND MOLD, INC., and ) | |
| GERALD M. O'CONNOR, JR., ) | |
| ) | |
| Defendants. ) | |

### PLAINTIFF NUCLEAR FUEL SERVICES, INC.'S OBJECTIONS TO REPORT AND RECOMMENDATIONS OF THE MAGISTRATE JUDGE

Plaintiff Nuclear Fuel Services, Inc. ("NFS") hereby submits its Objections to the Report and Recommendations of the Magistrate Judge. NFS respectfully objects to: 1) the Magistrate Judge's recommendation that the District Court consolidate the two independent cases that are pending before the Court, 2) the Magistrate Judge's recommendation that the District Court deny NFS's Motion to Remand; and 3) the Magistrate Judge's determination that issues of contract formation should be heard by the Magistrate Judge, who will preside over the underlying lawsuit in the event that the Court finds that there is no valid settlement agreement, rather than by this Court or by the State Court in the Declaratory Judgment Action.

### BACKGROUND

The Plaintiff and Defendants are involved in two separate actions currently pending in the District Court. The first case (the "Underlying Action," Case No. 2:02-CV-148) was filed in 2002 by Impact Plastics, Inc., Preston Tool and Mold, Inc., and Gerald M. O'Connor, Jr.

(collectively, "Impact Plastics") against NFS to recover for alleged damage to Impact Plastics' real property in Unicoi County, Tennessee. On June 16, 2003, pursuant to 28 U.S.C. § 636(c), the parties consented to transfer of the Underlying Action to the Magistrate Judge for final disposition. The second case (the "Declaratory Judgment Action," now Case No. 2:04-CV-338) was filed by NFS against Impact Plastics in September of 2004 in the Circuit Court for Unicoi County, Tennessee. In the Declaratory Judgment Action, NFS seeks a declaration by the Court that a purported agreement to settle the Underlying Action is unenforceable under Tennessee contract law because the parties never had a meeting of the minds. Impact Plastics has removed the Declaratory Judgment Action to this Court.

After Impact Plastics filed its Notice of Removal in the Declaratory Judgment Action, NFS filed a motion to remand that action to the Circuit Court for Unicoi County, Tennessee (the "Remand Motion"). This Court referred the Remand Motion to the Magistrate Judge for his Report and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). Shortly thereafter, in the Underlying Action, Impact Plastics filed a Motion to Confirm an interim arbitration award issued by an arbitrator purporting to act under authority granted to him by the same agreement that is currently being challenged in NFS's Declaratory Judgment Action.

On November 9, 2004, the parties participated in a joint hearing before the Magistrate Judge in which the Magistrate Judge heard oral arguments on both the Remand Motion (in the Declaratory Judgment Action) and the Motion to Confirm the interim arbitration award (in the Underlying Action).[1] The Magistrate Judge heard arguments on the Remand Motion for the purpose of submitting a report and recommendations to the District Court pursuant to 28 U.S.C.

---

[1] The Magistrate Judge did not hear any testimony at the November 9, 2004 hearing. Rather, the hearing was limited to oral arguments by counsel. A transcript of the hearing was filed with the Court on November 19, 2004.

§ 636(b)(1)(B). However, the Magistrate Judge heard arguments on the Motion to Confirm the interim arbitration award in his capacity as a district judge (by consent of the parties) pursuant to 28 U.S.C. § 636(c). On November 10, 2004, the Magistrate Judge issued his Report and Recommendations on the Remand Motion, in which he recommended that this Court deny the Remand Motion, consolidate the Declaratory Judgment Action with the Underlying Action, and transfer the consolidated case to the Magistrate Judge for a final disposition. On that same day, the Magistrate Judge issued an Order in the Underlying Action in which he ordered NFS to assume the risk of paying a $356,758.25 invoice related to an expansion facility that Impact Plastics had ordered in alleged reliance on the settlement agreement, and ordered the parties to appear at a hearing "as soon as reasonably possible" to determine the question of whether a valid and binding settlement agreement exists.

## OBJECTIONS TO REPORT AND RECOMMENDATIONS

A. The Court Should Not Consolidate the Pending Actions Because the Parties Have Not Consented to the Magistrate Judge's Jurisdiction Over the Declaratory Judgment Action

In his Report and Recommendations, the Magistrate Judge recommends that this Court *sua sponte* consolidate the Declaratory Judgment Action with the Underlying Action. NFS objects to consolidation of the two cases because the parties have not consented to the Magistrate Judge's jurisdiction over the Declaratory Judgment Action. The parties are constitutionally entitled to trial of the Declaratory Judgment Action by an Article III tribunal.

Section 636 of Title 28 of the United States Code states:

(c) Notwithstanding any provision of law to the contrary--
  (1) *Upon the consent of the parties*, a full-time United States magistrate [magistrate judge] or a part-time United States magistrate [magistrate judge] who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves…

3

28 U.S.C. § 636 (emphasis added). Section 636 also provides a specific procedure for consent of the parties and explicitly states that parties may withhold their consent:

> (2) If a magistrate [magistrate judge] is designated to exercise civil jurisdiction under paragraph (1) of this subsection, the clerk of court shall, at the time the action is filed, notify the parties of the availability of a magistrate [magistrate judge] to exercise such jurisdiction. *The decision of the parties shall be communicated to the clerk of court.* Thereafter, either the district court judge or the magistrate [magistrate judge] may again advise the parties of the availability of the magistrate [magistrate judge], but in so doing, shall also advise the parties *that they are free to withhold consent without adverse substantive consequences.*

Id. (emphasis added). "Unlike nonconsensual referrals of pretrial but case-dispositive matters under §636(b)(1), which leaves the district court free to do as it sees fit with the magistrate judge's recommendations, a §636(c)(1) referral gives the magistrate judge full authority over dispositive motions, conduct of trial, and entry of final judgment, all without district court review." Roell v. Withrow, 538 U.S. 580, 585 (2003).

This Court's consolidation of the Declaratory Judgment Action with the Underlying Action into a single action to be heard before the Magistrate Judge would be equivalent to referring the Declaratory Judgment Action directly to the Magistrate Judge without the parties' consent. Such an action would be in direct conflict with the clear language of 28 U.S.C. § 636 and Rule 73 of the Federal Rules of Civil Procedure, both of which require the *consent of the parties* before referral of an action to a Magistrate Judge for final disposition.[2] See 28 U.S.C.

---

[2] In relevant part, Rule 73 of the Federal Rules of Civil Procedure states:

> (a) When specially designated to exercise such jurisdiction by local rule or order of the district court, *and when all parties consent thereto*, a magistrate judge may exercise the authority provided by Title 28, U.S.C. §636(c) and may conduct any or all proceedings, including a jury or nonjury trial, in a civil case.

Fed. R. Civ. P. 73 (emphasis added).

§636(c); Fed. R. Civ. P. 73. The Magistrate Judge stated in his Report and Recommendations that "[o]bviously, the parties have not consented in [the Declaratory Judgment Action] and, unless they do so, it will remain District Judge Greer's case." (Report and Recommendations, p. 2.) Consent of the parties should not, and cannot, be obtained indirectly through consolidation of the two actions. Accordingly, this Court should not consolidate the two cases.

B.  The Motion to Remand Should Be Granted

Impact Plastics removed the Declaratory Judgment Action to this Court on grounds of diversity of citizenship and federal question. At the hearing on November 9, 2004, counsel for Impact Plastics acknowledged that there was no basis for a claim of diversity. (Nov. 9, 2004 Trans., p. 22.) Impact Plastics also appears to have abandoned the position it took in its Notice of Removal that the Federal Arbitration Act gives rise to federal question jurisdiction. As pointed out in NFS's Remand Motion, the law is clear that the FAA does not confer subject matter jurisdiction on the federal courts.[3] Rather, the majority of the argument at the hearing was devoted to the question of whether the federal court has *ancillary jurisdiction* over the Declaratory Judgment Action by virtue of the pendency of the Underlying Action.

The Magistrate Judge ultimately concluded that the federal court *did* have ancillary jurisdiction over the Declaratory Judgment Action. The Magistrate Judge predicated this determination on a statement from the Supreme Court case of Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994), upon which NFS had relied in arguing that the federal court did not have "inherent power" to decide the Declaratory Judgment Action by virtue of the Underlying Action. In Kokkonen, the Supreme Court found that a federal court did not have

---

[3]  NFS disputes that the Federal Arbitration Act applies, and a determination has not yet been made about whether Tennessee law or the FAA applies to the parties' purported settlement agreement.

5

jurisdiction to hear an action for breach of a settlement agreement merely because the settlement agreement purported to resolve a case that had previously been before the same federal court. The Kokkonen Court acknowledged that a Court could in some circumstances exercise ancillary jurisdiction in order to protect its own order; however, the Court found that ancillary jurisdiction was inappropriate in that case because "the only order [in Kokkonen] was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement." Kokkonen, 511 U.S. at 380.

Relying on Kokkonen for the proposition that the federal courts could exercise ancillary jurisdiction where an order of the Court was imperiled, the Magistrate Judge stated:

> In light of the cases now before this Court, the disposition of the original suit (No. 2:02-CV-148) could be "imperiled." For example, if it is remanded to state court, it could be literally years before this Court knows whether or not No. 2:02-CV-148 has been settled. If the state court ultimately holds that the case was not settled, then this Court will have to try 2:02-CV-148 since, rather obviously, it remains pending. On the other hand, if the state court says that it was settled, then an order of dismissal should be entered at that time. In other words, the federal court will be held hostage to the time-table of the state court, as well as to the ultimate decision of whether the case was settled.

(Report and Recommendations, p. 4.)

NFS respectfully believes that the Magistrate Judge misapplied Kokkonen. In Kokkonen, the Court found that a mere order of dismissal was not sufficient to confer ancillary jurisdiction over a subsequent lawsuit to enforce a settlement agreement. Here, there is no existing order whatsoever. Respectfully, the Magistrate Judge appears to have been concerned with the length of time that the Underlying Action might remain on the Magistrate Judge's docket and the risk of potentially inconsistent court orders. However, NFS submits that concern over the length of time a case remains on the Magistrate Judge's docket is not a sufficient ground for assuming jurisdiction over a case where no diversity or federal question jurisdiction exists.

6

Furthermore, Tennessee state court is the most appropriate venue in which to determine questions of Tennessee contract law. While the Magistrate Judge has pointed out a number of potential problems that could arise if the Magistrate Judge proceeds in the Underlying Action during the pendency of the Declaratory Judgment Action, all of these problems could be easily avoided if the Magistrate Judge simply awaited the outcome of the Declaratory Judgment Action before proceeding with the Underlying Action. NFS respectfully submits that the Court should grant NFS's Remand Motion notwithstanding the Report and Recommendations issued by the Magistrate Judge.[4]

    C.    <u>Issues of Contract Formation Should be Heard by This Court or the State Court in the Earlier-Filed Declaratory Judgment Action, and Not by the Magistrate Judge in an Expedited Hearing</u>

In the Underlying Action, the Magistrate Judge has scheduled a hearing for the second week in January to determine on an expedited basis many of the same questions of contract formation that are central to the Declaratory Judgment Action. If he does so, the Magistrate Judge will arguably eviscerate the Declaratory Judgment Action and deprive NFS of many of the procedural rights to which it is entitled by virtue of having filed that action.

---

[4] The Magistrate Judge also stated in his Report and Recommendations:

> The Magistrate Judge does not intend to dismiss [the Underlying Action] solely because Nuclear Fuel implicitly argues in one breath that it was settled (by its reliance on <u>Kokkonen</u>), yet explicitly argues in the next breath that it is not settled). If this Court dismisses 2:02-CV-148, it must be because the *Magistrate Judge* finds that it was settled; such a decision necessarily will entail a finding that there was a meeting of the minds regarding the settlement agreement sought to be enforced.

(Report and Recommendations, p. 6.) However, NFS never argued, either explicitly or implicitly, that reliance on <u>Kokkonen</u> would mandate immediate dismissal of the Underlying Lawsuit. For purposes of the Remand Motion, NFS relied on <u>Kokkonen</u> merely to demonstrate that a proposition asserted by Impact Plastics regarding "inherent power" of the Court had been overruled.

7

NFS has raised a significant number of concerns over the validity of the purported settlement agreement, including questions about whether the parties ever had a meeting of the minds on the most basic terms of the purported agreement, whether Impact Plastics made material misrepresentations to NFS during the negotiating process, and whether Impact Plastics has engaged in a pattern of behavior that rises to the level of fraud. The Magistrate Judge has set a fast-track hearing for early January on the "meeting of the minds" issue, in which all of the aforementioned concerns will necessarily be asserted by NFS as defenses to contract formation. The parties must be given a sufficient amount of time and latitude for discovery in order to allow them to adequately pursue their claims and defenses. The Magistrate Judge's January hearing deprives the parties, and particularly NFS, of the procedural entitlements it would have in the Declaratory Judgment Action under the Federal Rules of Civil Procedure.[5]

At the November 9, 2004 hearing, Impact Plastics argued that a ruling was needed on an expedited basis because a "Metal Building" that had allegedly been ordered in reliance on the settlement agreement would be arriving on that same day and would have to be paid for within ten days. The Magistrate Judge ordered NFS to bear the risk of paying for the building in the short term, pending the outcome of the parties' disputes. NFS cooperated with the Magistrate Judge's order so that the perceived "emergency situation" created by the arrival of the Metal Building could be alleviated and the parties could focus on the true legal issues before the Court. Now that NFS has paid for the Metal Building pursuant to the Court's order, the urgency – and thus the need for an expedited hearing – is gone.[6]

---

[5] The fact that an already abbreviated discovery period includes the Thanksgiving, Christmas, and New Years' holidays severely restricts the parties' ability to take depositions and conduct the discovery necessary to prepare for the hearing.

[6] Significantly, the so-called crisis over payment for the Metal Building was created entirely by Impact Plastics. Impact Plastics asserts that it ordered the Metal Building in alleged

NFS filed its Declaratory Judgment Action more than a month before Impact Plastics filed its application to confirm the arbitrator's interim award. By filing their Motion to Confirm in the Underlying Lawsuit rather than in the Declaratory Judgment Action and by requesting an expedited hearing on the Motion to Confirm, Impact Plastics was attempting to "leapfrog" ahead of NFS and force the contract formation issues to a head in the Underlying Action. The benefits to Impact Plastics of this maneuver are apparent – they would have the matter determined in an expedited proceeding, with limited discovery, and on something less than a full record. NFS has now paid for the Metal Building, thereby obviating Impact Plastics' alleged need for an expedited hearing.[7] Accordingly, NFS submits that the contract formation issues presented by the earlier filed Declaratory Judgment Action should be heard by the State court consequent to this Court's granting of NFS's Remand Motion; or, if the Remand Motion is not granted, the contract formation issues should be heard by this Court on a timetable consistent with the safeguards provided in Rule 16 and Rules 26-37 of the Federal Rules of Civil Procedure.

Furthermore, there are significant practical reasons why this Court or the State Court rather than the Magistrate Judge should preside over a hearing on the issue of whether the purported settlement agreement is a valid and binding contract. At such a hearing, the parties will present witness testimony (potentially including the testimony of the parties' Mediator) regarding statements that were made to the Mediator during the mediation proceedings. The parties also may present evidence of communications that took place among the Plaintiffs and

---

reliance on the settlement agreement; however, at the time it ordered the Metal Building Impact Plastics was fully aware that NFS was contesting the validity of the settlement agreement.

[7] Impact Plastics has argued in pleadings filed with the Magistrate Judge that an expedited hearing is required in order to preserve for Impact Plastics "the benefit of its settlement." However, there is nothing in the Term Sheet about a "fast track" or expedited construction of the expansion facility, and there is certainly no reason that Impact Plastics' desire for "fast track" construction should outweigh NFS's entitlement to a full-scale hearing on whether the parties are operating under a valid settlement agreement.

their representatives, and among the Defendants and their representatives, during the mediation. During the course of such testimony, it is probable that information regarding the merits of the parties' claims and defenses may be revealed. As a practical matter, therefore, it would be far more appropriate for the State Court rather than the Magistrate Judge, who may ultimately preside over a trial in the Underlying Action, to preside over a hearing on the issue of contract formation. Likewise, if the motion to remand is not granted, the question of whether the Term Sheet is a valid contract should be determined by the District Court in the Declaratory Judgment Action.

For all of the foregoing reasons, NFS's Motion to Remand should be granted, and a trial on the question of whether the parties' "Term Sheet" constitutes a valid contract should proceed in the Declaratory Judgment Action.

Respectfully submitted,

/s/ Wallace W. Dietz

_____

Wallace W. Dietz
Russell E Stair
Bass, Berry & Sims
315 Deaderick Street
Suite 2700
Nashville, TN 37238-0002
Tel: (615) 742-6200
Fax: (615) 742-2749

and

Stephen E Fox
206 Princeton Road, Suite 32
Johnson City, TN 37601
Tel: (423) 283-7009
Fax: (423) 283-7309

and

Michael J Tone
Nixon Peabody LLP
990 Stewart Avenue
Garden City, NY 11530
Tel: (516) 832-7500
Fax: (516) 832-7555

*Attorneys for Nuclear Fuel Services, Inc.*

11
Case 2:04-cv-00338   Document 21   Filed 11/24/04   Page 11 of 12   PageID #: <pageID>

**CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2004, a copy of the foregoing was filed electronically. Notice of this filing will be sent electronically by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties, if any, will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

/s/ Wallace W. Dietz
_____